* ALFRED PENN and another *v.* WILLIAM COLLINS and others.

Where the lessors of property, without the consent of the sureties of the lessees, take back a part which had been occupied by the lessees as a dwelling, and relet it to a third person, the sureties will be released, the contract being materially altered without their assent. *Per curiam.* It must be presumed, that the sureties consented to bind themselves in relation to the situation of the whole property at the time of the lease, and in consideration of the subrogation to which they were legally entitled to the lessors' rights and privileges, among others, upon the furniture which existed in the dwelling house. C. C. 2675, 2676, 2677, 2679, 3030. —

Where the lessors of property, having sued the lessees for the rent due, and to come due under the contract, and caused property, on which they had the lessors' privilege, to be seized to an amount equal to the rent due, and to come due, abandon the seizure without a trial, the sureties of the lessees will be discharged.

A party dissatisfied with the charge of the Judge to the jury, must require him to give his opinion in writing, and except to it before the jury retires; it cannot be done afterwards. *A fortiori,* is he precluded from making the charge a ground for a new trial, unless excepted to in due time. C. P. 517.

APPEAL from the Commercial Court of New Orleans, *Watts,* J. *Lockett* and *Micou,* for the appellants.

*Rousseau* and *Josephs,* contra.

SIMON, J. Two suits having been instituted against W. & P. Collins, as principals, and Wilcox, Anderson & Co., as sureties, to recover the amount of five months rent of certain property, leased by the plaintiffs to said W. & P. Collins, at the rate of three hundred dollars a month, they were consolidated and tried together as one suit. The matter in controversy was submitted to a jury, who found a verdict in favor of the plaintiffs against the Collins, and in favor of the sureties against the plaintiffs. A judgment was rendered accordingly; and the latter, after a vain attempt to obtain a new trial, took this appeal.

The plaintiffs' claim is founded upon a contract of lease executed on the 19th of July, 1838, by which it is agreed, that they lease to W. & P. Collins, for the term of two years, from the first of November, 1838, the brick shed and yard fronting on Magazine street, between Girod and Julia streets, usually called Penn's

Yard, and the frame dwelling house adjoining the same ; for which the lessees agred to pay $375 per month, payable monthly. The other defendants, Wilcox, Anderson & Co., intervened in the contract, to guarantee the punctual performance of the agreement on the part of the lessees.

The sureties resist the claims set up in the two suits, on two grounds : 1st, That they are not bound, because the plaintiffs, having taken possession of, and advertised the property to rent in one of the public newspapers, and finding no new tenant, then altered the original contract, and made a new agreement and arrangement with W. & P. Collins, to which the sureties were not parties. 2d, That in a previous suit, brought by the plaintiffs against W. & P. Collins for rent due, and to fall due until the expiration of the lease, said plaintiffs caused to be seized goods to the value of eight thousand dollars, on which they had a privilege and preference, but that they released and relinquished said property, without trial, thus depriving the sureties of the means of amply securing themselves.

On the first ground of defence, the evidence shows, that H. W. Palfrey, a witness examined on the trial, was the agent of the plaintiffs in this transaction ; that, after the lease was made, said agent made an arrangement in writing, with W. & P. Collins, to take the dwelling house off their hands, and rent it, and to reduce the rent $75 per month. The witness does not know whether the sureties knew of the agreement ; but he did not consult them about it, and does not think he notified them of it. He was requested by W. & P. Collins to relet the premises for the residue of the lease, as the latter could not afford to keep them ; and an advertisement produced on the trial, was put in the papers at the Collins' request. This advertisement is dated the 20th of August, 1839, and is signed by Palfrey & Co., offering to rent the whole property. On the 15th of January, 1840, the dwelling house was leased by the plaintiff's agent to one Wm. G. Brown, who accepted and signed the following written contract, or agreement, to wit : " The lessee is not to use any part of the property leased, in any way that may affect the insurance ; is not to sublease it without the written consent of the lessors, and is to return it in the same order in which it is received, &c. Henry W. Palfrey, agent of J. Erwin and A.

Penn, hereby leases to W. S. Brown, agreeable to the above conditions, the dwelling house in Magazine street, now occupied by the lessee, to be used and occupied as a dwelling house, and for no other purpose, from 25th of December, 1839, to 1st of November, 1841; for which the lessee agrees to pay seventy dollars per month, payable by his notes, payable quarterly."

With this evidence, it appears to us that the jury did not err in declaring, by their verdict, that the sureties were discharged. It is clear that the contract was materially changed and altered, without the sureties' consent and participation, and this must have the effect of releasing them. By the original contract, the whole property was leased for the sum of $375 per month, payable monthly; whilst, in consequence of the lease to Brown, the dwelling house was withdrawn by the lessors, who rented it in their own name, to another person, for the sum of $70 per month, payable quarterly. The consequence of this second contract was, that the first lessees were permitted to abandon a portion of the leased premises, and to remove their furniture from the dwelling house, whereby the securities were greatly lessened to the prejudice of the sureties. The lessors had originally a right of pledge, or privilege, upon that furniture, for the payment of the whole rent. This right was abandoned by the subsequent contract passed by the lessors, in their own name, with the second lessee; as the dwelling house, having been taken out of the first contract, the first lessees' furniture, which may have existed in said house, became released from the exercise of the lessors' right to have it seized and sold, to satisfy the rent subsequently due upon the property. Civil Code, arts. 2675, 2676, 2677, 2679. This the lessors were not at liberty to do, without the consent of the sureties. It is true, that the amount of the rent was reduced, but the securities were also greatly diminished; and as we may fairly presume, that the sureties consented to bind themselves in relation to the situation of the whole property at the time of the lease, and in consideration of the subrogation, by which they were legally entitled to the lessors' rights and privileges, among others, upon the furniture which may have existed in the dwelling house, said lessors could not, by their own act, deprive the sureties of their legal subrogation. Civil Code, art. 3030.

It has been said, that the lease of the dwelling house was made in the name, at the request, and for the benefit of the defendants, W. & P. Collins ; that it is nothing but a sub-lease, which the lessees had a right to pass to another person.   This may have been originally the intention of the parties, when the whole property was advertised for rent ; but the lease of the dwelling house was subsequently made in the name of the lessors, under different conditions, for a different price, and for a longer term than that mentioned in the first lease.   W. & P. Collins do not appear to have had any interest in the lease to Brown ; their name is not even alluded to in the act, and it seems that it was executed after the dwelling house had been taken off the Collins' hands.  The circumstance of this suit having been brought for the rent at the rate of $300 per month shows also conclusively, that the Collins' responsibility for the rent of the dwelling house, was at an end from the time that it had been rented to Brown by the plaintiffs ; from that time, their furniture and other effects in the house had been released.

The first ground of defence being, in our opinion, well founded, it is unnecessary to investigate the second ; but we cannot forbear remarking, that an attentive examination of the evidence on this point, has led us to the conclusion that it must also prevail.

With regard to the motion for a new trial made by the plaintiffs on the grounds that the court, *a qua*, erred in instructing the jury, and that the verdict was rendered upon a misapprehension by the jury of the charge of the court, we have no other evidence of the charge complained of, but the written motion of the plaintiffs. The practice is well settled, that the party who is dissatisfied with the charge of the court, must require the Judge to give his opinion in writing, and take his exception to it before the jury retires ; it cannot be done afterwards, and, *a fortiori*, is the party precluded from making it a ground for a new trial, unless excepted to in due time.   Code of Practice, art. 517.   17 La. 545.

*Judgment affirmed.*